# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 10-1973

FREEDOM FROM RELIGION FOUNDATION, INC., *et al.*,

*Plaintiffs-Appellees*,

*v.*

BARACK OBAMA, President of the United States, and ROBERT GIBBS, White House Press Secretary,

*Defendants-Appellants*.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 08-cv-588-bbc—**Barbara B. Crabb**, *Judge*.

ARGUED DECEMBER 2, 2010—DECIDED APRIL 14, 2011

Before EASTERBROOK, *Chief Judge*, and MANION and WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Since the founding of the Republic, Congress has requested Presidents to call on the citizens to pray. Every President except Thomas Jefferson, who deemed such proclamations inconsistent

with the Constitution's first amendment, has complied. See *Lynch v. Donnelly*, 465 U.S. 668, 674–78 (1984). The first of these proclamations, establishing Thanksgiving Day, was issued by President Washington on October 3, 1789, shortly after Congress transmitted to the states the text of what is now the first amendment. We reproduce President Washington's proclamation as Appendix A to this opinion.

Presidential proclamations for both Memorial Day and Thanksgiving Day commonly include an invitation to pray. In 1952 the House and Senate adopted a joint resolution asking the President to establish a third such day annually, to be called a "national day of prayer." Pub. L. 324, 66 Stat. 64. President Truman proclaimed July 4, 1952, as the first National Day of Prayer. Proclamation 2978, 3 C.F.R. 160 (1949–53). Later presidents issued similar proclamations, though they designated different dates. In 1988 Congress enacted 36 U.S.C. §119, codifying the first Thursday in May as the appropriate day. As amended slightly in 1998, this statute reads:

> The President shall issue each year a proclamation designating the first Thursday in May as a National Day of Prayer on which the people of the United States may turn to God in prayer and meditation at churches, in groups, and as individuals.

The most recent proclamation under this statute, issued by President Obama on April 30, 2010, appears as Appendix B to this opinion.

Plaintiffs in this suit (an organization and six of its members) contend that §119 violates the establishment clause of the first amendment. The district judge dismissed one defendant as a private actor outside the Constitution's reach; plaintiffs have not appealed that decision. The other two defendants—the President and his Press Secretary—moved to dismiss for want of standing. The district judge denied that motion. 691 F. Supp. 2d 890 (W.D. Wis. 2010). The judge later concluded that both the statute and all proclamations issued under it violate the establishment clause. 705 F. Supp. 2d 1039 (W.D. Wis. 2010). The judge issued a declaratory judgment that §119 is invalid, plus an injunction forbidding the President of the United States to issue any proclamation under §119. 705 F. Supp. 2d at 1070. The President and the Press Secretary have appealed.

Standing is the first question because, unless the case presents a justiciable controversy, the judiciary must not address the merits. See *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998). Standing has three components: injury, causation, and redressability. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–62 (1992). We conclude that neither the statute nor the President's implementing proclamations injures plaintiffs, who therefore lack standing.

Section 119 imposes duties on the President alone. It does not require any private person to do anything—or for that matter to take any action in response to whatever the President proclaims. If anyone suffers injury,

therefore, that person is the President, who is not complaining. No one has standing to object to a statute that imposes duties on strangers. See, e.g., *Allen v. Wright*, 468 U.S. 737 (1984). See also *Elk Grove Unified School District v. Newdow*, 542 U.S. 1 (2004), which holds that a person who objects (on establishment clause grounds) to the words "under God" in the Pledge of Allegiance lacks standing to contest the Pledge's content, when the litigant has not been obliged to say the Pledge himself and does not have parental rights with respect to a pupil who is present when the Pledge is recited. It takes an invasion of one's own rights to create standing. (Plaintiffs do not contend that they come within the rare situation in which a statute's addressees cannot protect themselves and *jus tertii* litigation may be authorized. Nor do plaintiffs invoke taxpayer standing. See *Arizona Christian School Tuition Organization v. Winn*, No. 09–987 (U.S. Apr. 4, 2011); *Hein v. Freedom From Religion Foundation, Inc.*, 551 U.S. 587 (2007).)

Unlike §119, the President's proclamations are addressed to plaintiffs, in common with all citizens. The President's 2010 proclamation includes this sentence: "I call upon the citizens of our Nation to pray, or otherwise give thanks, in accordance with their own faiths and consciences, for our many freedoms and blessings, and I invite all people of faith to join me in asking for God's continued guidance, grace, and protection as we meet the challenges before us." But although this proclamation speaks to all citizens, no one is obliged to pray, any more than a person would be obliged to hand over his money if the President asked all citizens to

support the Red Cross and other charities. It is not just that there are no penalties for noncompliance; it is that disdaining the President's proclamation is not a "wrong." The President has made a request; he has not issued a command. No one is injured by a request that can be declined. Cf. *Florida v. Rodriguez*, 469 U.S. 1, 5–6 (1984) (police are entitled to ask people to answer questions, or consent to search, even when they lack the authority to compel favorable action); *United States v. Childs*, 277 F.3d 947 (7th Cir. 2002) (en banc) (same).

A President frequently calls on citizens to do things that they prefer not to do—to which, indeed, they may be strongly opposed on political or religious grounds. Yet no one supposes that the Republican Party has standing to ask the judiciary to redress the "injury" inflicted when President Obama speaks to his own supporters and tries to influence the undecided. Nor would any (sensible) person suppose that a court could take a blue pencil to a President's inaugural address or State of the Union speech and remove statements that may offend some members of the audience. President Lincoln's second inaugural address, likely the greatest speech ever made by an American President, mentions God seven times and prayer three times, including the sentence: "Fondly do we hope, fervently do we pray, that this mighty scourge of war may speedily pass away." The address is chiseled in stone at the Lincoln Memorial on the National Mall. An argument that the prominence of these words injures every citizen, and that the Judicial Branch could order them to be blotted out, would be dismissed as preposterous.

The Judicial Branch does not censor a President's speech. *Johanns v. Livestock Marketing Association*, 544 U.S. 550 (2005), holds that even persons who are taxed to pay for governmental speech are not entitled to relief from the message (or the obligation to pay for it). Those who do not agree with a President's statement may speak in opposition to it; they are not entitled to silence the speech of which they disapprove.

Plaintiffs contend that they are injured because they feel excluded, or made unwelcome, when the President asks them to engage in a religious observance that is contrary to their own principles. It is difficult to see how any reader of the 2010 proclamation would feel excluded or unwelcome. Here again is the proclamation's only sentence that explicitly requests citizens to pray: "I call upon the citizens of our Nation to pray, *or otherwise give thanks, in accordance with their own faiths and consciences*, for our many freedoms and blessings, and I invite all people of faith to join me in asking for God's continued guidance, grace, and protection as we meet the challenges before us." But let us suppose that plaintiffs nonetheless feel slighted. Still, hurt feelings differ from legal injury. The "value interests of concerned bystanders" (*United States v. SCRAP*, 412 U.S. 669, 687 (1973)) do not support standing to sue.

If a perceived slight, or a feeling of exclusion, were enough, then Michael Newdow would have had standing to challenge the words "under God" in the Pledge of Allegiance, yet the Supreme Court held that he lacks standing. Similarly, if offense at a public official's sup-

port of religion were enough, the plaintiffs would have had standing in *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982). A federal agency donated surplus property to an educational institution that was supervised by a religious order. The Court held that persons who objected to the transfer lacked standing, because the transfer did not injure them. Everything that plaintiffs say in support of their own claim of injury either was, or could have been, said in *Valley Forge* as well. If plaintiffs have standing to challenge the President's proclamation, then *Newdow* and *Valley Forge* are dead letters.

Plaintiffs rely principally on a series of decisions in which this circuit has held that persons who are obliged to view religious displays in order to access public services, or reach their jobs, have standing to contest the displays' contents. See, e.g*., American Civil Liberties Union v. St. Charles*, 794 F.2d 265 (7th Cir. 1986); *Gonzales v. North Township*, 4 F.3d 1412 (7th Cir. 1993); *Books v. City of Elkhart*, 235 F.3d 292, 299–301 (7th Cir. 2000) (*Books I*); *Books v. Elkhart County*, 401 F.3d 857 (7th Cir. 2005) (*Books II*). Three of these decisions predate *Newdow*, and in the only post-*Newdow* decision (*Books II*) the litigants did not ask the court to revisit *Books I*; the panel in *Books II* did not tackle the standing question independently or mention *Newdow*. Only one of the four decisions discusses *Valley Forge*, and none attempts to reconcile its holding with *Freedom From Religion Foundation, Inc. v. Zielke*, 845 F.2d 1463 (7th Cir. 1988), which holds that viewers of an unwelcome religious display lack standing.

Eventually we may need to revisit the subject of observers' standing in order to reconcile this circuit's decisions, but today is not the time. We observed in *St. Charles* that, as a result of *Valley Forge*, "[t]he fact that the plaintiffs do not like a cross to be displayed on public property—even that they are deeply offended by such a display—does not confer standing". 794 F.2d at 268. What did provide standing, we held, is that the plaintiffs had altered their daily commute, thus incurring costs in both time and money, to avoid the unwelcome religious display.

Our plaintiffs are covered by the rule of *Valley Forge* and *St. Charles* that offense at the behavior of the government, and a desire to have public officials comply with (plaintiffs' view of) the Constitution, differs from a legal injury. The "psychological consequence presumably produced by observation of conduct with which one disagrees" is not an "injury" for the purpose of standing. *Valley Forge*, 454 U.S. at 485. Plaintiffs have not altered their conduct one whit or incurred any cost in time or money. All they have is disagreement with the President's action. But unless all limits on standing are to be abandoned, a feeling of alienation cannot suffice as injury in fact.

If this means that no one has standing, that does not change the outcome. The Supreme Court has concluded that "the abstract injury in nonobservance of the Constitution asserted by . . . citizens" in general is not a species of "injury in fact," even if the upshot is that no one can sue. *Schlesinger v. Reservists Committee to Stop*

*the War*, 418 U.S. 208, 223 n.13 (1974). See also *Hein* and *United States v. Richardson*, 418 U.S. 166 (1974). Any other approach "would convert standing into a require-ment that must be observed only when it is met." *Valley Forge*, 454 U.S. at 489.

The judgment of the district court is vacated, and the case is remanded with instructions to dismiss for want of a justiciable controversy.

APPENDIX A

WHEREAS it is the duty of all nations to acknowledge the providence of Almighty God, to obey His will, to be grateful for His benefits, and humbly to implore His protection and favor; and

WHEREAS both Houses of Congress have, by their joint committee, requested me "to recommend to the people of the United States a day of public thanksgiving and prayer, to be observed by acknowledging with grateful hearts the many and signal favors of Almighty God, especially by affording them an opportunity peaceably to establish a form of government for their safety and happiness:"

NOW, THEREFORE, I do recommend and assign Thursday, the 26th day of November next, to be devoted by the people of these States to the service of that great and glorious Being who is the beneficent author of all the good that was, that is, or that will be; that we may then all unite in rendering unto Him our sincere and humble thanks for His kind care and protection of the people of this country previous to their becoming a nation; for the signal and manifold mercies and the favorable interpositions of His providence in the course and conclusion of the late war; for the great degree of tranquillity, union, and plenty which we have since enjoyed; for the peaceable and rational manner in which we have been enabled to establish constitutions of government for our safety and happiness, and particularly the national one now lately instituted; for the civil and religious liberty with which we are blessed, and the

means we have of acquiring and diffusing useful knowledge; and, in general, for all the great and various favors which He has been pleased to confer upon us.

And also that we may then unite in most humbly offering our prayers and supplications to the great Lord and Ruler of Nations, and beseech Him to pardon our national and other transgressions; to enable us all, whether in public or private stations, to perform our several and relative duties properly and punctually; to render our National Government a blessing to all the people by constantly being a Government of wise, just, and constitutional laws, discreetly and faithfully executed and obeyed; to protect and guide all sovereigns and nations (especially such as have shown kindness to us), and to bless them with good governments, peace, and concord; to promote the knowledge and practice of true religion and virtue, and the increase of science among them and us; and, generally, to grant unto all mankind such a degree of temporal prosperity as He alone knows to be best.

GIVEN under my hand, at the city of New-York, the third day of October, in the year of our Lord, one thousand seven hundred and eighty-nine.

GEORGE WASHINGTON.

APPENDIX B

Throughout our history, whether in times of great joy and thanksgiving, or in times of great challenge and uncertainty, Americans have turned to prayer. In prayer, we have expressed gratitude and humility, sought guidance and forgiveness, and received inspiration and assistance, both in good times and in bad.

On this day, let us give thanks for the many blessings God has bestowed upon our Nation. Let us rejoice for the blessing of freedom both to believe and to live our beliefs, and for the many other freedoms and opportunities that bring us together as one Nation. Let us ask for wisdom, compassion, and discernment of justice as we address the great challenges of our time.

We are blessed to live in a Nation that counts freedom of conscience and free exercise of religion among its most fundamental principles, thereby ensuring that all people of goodwill may hold and practice their beliefs according to the dictates of their consciences. Prayer has been a sustaining way for many Americans of diverse faiths to express their most cherished beliefs, and thus we have long deemed it fitting and proper to publicly recognize the importance of prayer on this day across the Nation.

Let us remember in our thoughts and prayers those suffering from natural disasters in Haiti, Chile, and elsewhere, and the people from those countries and from around the world who have worked tirelessly and selflessly to render aid. Let us pray for the families of the West Virginia miners, and the people of Poland who so

recently and unexpectedly lost many of their beloved leaders. Let us pray for the safety and success of those who have left home to serve in our Armed Forces, putting their lives at risk in order to make the world a safer place. As we remember them, let us not forget their families and the substantial sacrifices that they make every day. Let us remember the unsung heroes who struggle to build their communities, raise their families, and help their neighbors, for they are the wellspring of our greatness. Finally, let us remember in our thoughts and prayers those people everywhere who join us in the aspiration for a world that is just, peaceful, free, and respectful of the dignity of every human being.

NOW, THEREFORE, I, BARACK OBAMA, President of the United States of America, by virtue of the authority vested in me by the Constitution and laws of the United States of America, do hereby proclaim May 6, 2010, as a National Day of Prayer. I call upon the citizens of our Nation to pray, or otherwise give thanks, in accordance with their own faiths and consciences, for our many freedoms and blessings, and I invite all people of faith to join me in asking for God's continued guidance, grace, and protection as we meet the challenges before us.

IN WITNESS WHEREOF, I have hereunto set my hand this thirtieth day of April, in the year of our Lord two thousand ten, and of the Independence of the United States of America the two hundred and thirty-fourth.

BARACK OBAMA

WILLIAMS, *Circuit Judge*, concurring.  Although I ultimately agree that the plaintiffs in this case lack standing, I write separately to note some concerns I have with the majority's reasoning and the uncertainty of the Supreme Court's precedent in this area.

The majority looks to *Elk Grove Unified School District v. Newdow*, 542 U.S. 1 (2004) and relies on it for the proposition that a feeling of exclusion is not enough to confer Article III standing. If it were, the majority reasons, then Newdow would have had standing to challenge the words "under God" in the Pledge of Allegiance.

*Newdow* does not support the majority's conclusion. The only standing-related issue before the Court in *Newdow* was whether Newdow had standing as a parent even though he lacked the right to litigate as his daughter's "next friend." *Id*. at 15. The Court granted certiorari on two questions only: (1) whether Newdow had standing as a noncustodial parent to challenge the school district's policy; and (2) if so, whether the policy offended the First Amendment. *Id.* at 10. The Court concluded only that Newdow lacked prudential standing—not that he lacked Article III standing. *Id.* at 17-18. In fact, Chief Justice Rehnquist's concurrence explicitly states, "To be clear, the Court does not dispute that respondent Newdow . . . satisfies the requisites of Article III standing." *Id*. at 20 (Rehnquist, J., concurring).

The Supreme Court has cautioned against drawing conclusions based on jurisdictional issues that have not been decided. *See Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 119 (1984). I do not agree that

*Newdow* supports the proposition that the plaintiffs here do not have Article III standing because the Court could have, but did not, consider whether Newdow had standing separate and apart from his status as a parent. In fact, in footnote 8 of the Court's opinion, the Court went so far as to assume that Newdow could satisfy Article III standing on his own:

> Newdow's complaint and brief cite several additional bases for standing: that Newdow "at times has himself attended—and will in the future attend—class with his daughter;" that he "has considered teaching elementary school students in [the School District];" that he has "attended and will continue to attend" school board meetings at which the Pledge is "routinely recited," and that the School District uses his tax dollars to implement its Pledge policy. *Even if these arguments suffice to establish Article III standing*, they do not respond to our prudential standing concerns. . . .

*Newdow*, 542 U.S. at 18 n.8 (emphasis added). Newdow did not argue that he was required to recite the Pledge himself, as the majority suggests would have been necessary for him to have standing. Rather, he alleged that he would attend the classroom and board meetings where the Pledge was recited, and would therefore be directly exposed to the government's unwelcome religious message. *See id.* The Court was willing to assume that these allegations would have sufficed to confer Article III standing. *See id.*

Nor, as the majority suggests, must the plaintiffs alter their behavior in order to have a cognizable injury. In *Doe v. County of Montgomery*, 41 F.3d 1156, 1161-62 (7th Cir. 1994), we held that whether a plaintiff has altered his behavior is not controlling. We stated that a plaintiff can also satisfy the standing requirement by establishing that he is subject to direct and unwelcome exposure to religious messages. *Id.* The majority calls into question our precedent in *Books v. City of Elkhart*, 235 F.3d 292, 299-301 (7th Cir. 2000) (hereinafter "*Books I*"), and *Books v. Elkhart County*, 401 F.3d 857, 861-62 (7th Cir. 2005) (hereinafter "*Books II*"), which reaffirmed the principle that a plaintiff need not allege a change in behavior to have standing, because those cases were decided before *Newdow* or did not mention *Newdow*. But *Newdow* would not have changed the analyses because it did not address Article III standing.

I also do not see a need to call into question those cases on the grounds that they did not address *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982) or attempt to reconcile their holdings with *Freedom From Religion Foundation, Inc. v. Zielke,* 845 F.2d 1463 (7th Cir. 1988). *Books I* and *Books II* both rely heavily on *Doe*, which addressed both *Valley Forge* and *Zielke*. *Doe* harmonized the holding that an allegation of direct exposure to unwelcome religious conduct satisfies the injury-in-fact requirement with *Zielke*'s holding that the plaintiffs in that case did not have standing to object to a Ten Commandments display in a park. *Doe,* 41 F.3d at 1161. In *Doe,* we explained that the plaintiffs in *Zielke* did not alter their

behavior "and [they] failed to demonstrate that they were exposed to the monument during their normal routines or in the course of their usual driving or walking routes." *Doe,* 41 F.3d at 1161.

The rule in every other circuit that has considered the question is that while an allegation of a change in behavior is sufficient to confer standing, it is not required. *Suhre v. Haywood County,* 131 F.3d 1083, 1087-88 (4th Cir. 1997) (plaintiff need not allege a change in behavior to challenge religious display); *Am. Civil Liberties Union of Ky. v. Grayson County,* 591 F.3d 837, 843 (6th Cir. 2010) (standing satisfied by allegations of direct and unwelcome contact with government-sponsored religious object); *Vasquez v. Los Angeles County,* 487 F.3d 1246, 1251-52 (9th Cir. 2007) (psychological harm resulting from direct contact with religious symbol is sufficient to confer standing and a change in behavior is not required); *Foremaster v. City of St. George,* 882 F.2d 1485, 1490-91 (10th Cir. 1989) (no change in behavior required to challenge religious display); *Saladin v. City of Milledgeville,* 812 F.2d 687, 692-93 (11th Cir. 1987) (same). I see no need to diverge from this rule.

Notwithstanding my concerns with the majority's reasoning, and my belief that this is a close case, I agree that ultimately the plaintiffs do not have standing. In *Valley Forge,* the Supreme Court held that a "psychological consequence" does not suffice as concrete harm when it is produced merely by "observation of conduct with which one disagrees." 454 U.S. at 485-86. The plaintiffs in that case complained that the government had con-

veyed surplus property to a religious college for free in violation of the Establishment Clause. *Id.* at 486-87. The Court found that the plaintiffs did not have standing, but it also reiterated that, "[i]n reaching this conclusion, we do not retreat from our earlier holdings that standing may be predicated on noneconomic injury." *Id.* at 486.

The Court simply has not been clear as to what distinguishes the psychological injury produced by conduct with which one disagrees from an injury that suffices to give rise to an injury-in-fact in Establishment Clause cases. As the Ninth Circuit recently noted, the Court has decided cases in many contexts where the plaintiffs claimed that they were hurt by exposure to unwelcome religious messages from the government, including cases involving a creche in a county courthouse, a creche in a public park, the Ten Commandments displayed on the grounds of a state capitol, the Ten Commandments displayed at a courthouse, a cross displayed in a national park, prayer in a football game, school prayer, a moment of silence at school, Bible reading at a public school, and a religious invocation at graduation. *Catholic League for Religious and Civil Rights v. City of San Francisco*, 624 F.3d 1043, 1049-50 (9th Cir. 2009) (citing Supreme Court cases). In all of those cases, the Court treated standing as sufficient, even though it appears that nothing was affected but the religious or irreligious sentiments of the plaintiffs. *Id.* "To ignore the import of those cases for the standing analysis, one would have to believe the Supreme Court repeatedly overlooked a major standing problem and decided a plethora of

highly controversial cases unnecessarily and inappropriately." *Newdow v. Roberts*, 603 F.3d 1002, 1014 (D.C. Cir. 2010) (Kavanaugh, J., concurring). Yet, as recently as last week, the Court stated in *Arizona Christian School Tuition Organization v. Winn* that even though it had decided a number of Establishment Clause cases on the merits that appeared to be in tension with its decision to find no standing in the case before it, those cases were not dispositive because they did not address the threshold standing question. *Ariz. Christian Sch. Tuition Org.,* Nos. 09-987 & 09-991 (U.S. Apr. 4, 2011).

The plaintiffs in this case allege that they feel "excluded" when the President issues a proclamation to commemorate the National Day of Prayer, which pursuant to § 119 directs the President to proclaim that people "may" turn to God in prayer. The plaintiffs state that they learned about the National Day of Prayer through the media, through their friends, and by visiting the White House website. Although the reach of *Valley Forge* is unclear and a plaintiff need not change his or her behavior to have standing, the plaintiffs' allegations here seem to amount to nothing more than "the observation of conduct with which [they] disagree," which *Valley Forge* held was insufficient to confer standing. At bottom, the plaintiffs' allegations are too attenuated to confer standing. I therefore concur that the plaintiffs do not have standing and therefore do not reach whether § 119 violates the Establishment Clause.