In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 14-3369, -3371

JOSEPH PEERY, *et al.*,

*Plaintiffs-Appellants*,

*v.*

CHICAGO HOUSING AUTHORITY, *et al.*,

*Defendants-Appellees*.

Appeals from the United States District Court for the
Northern District of Illinois, Eastern Division.
Nos. 13 C 5819, 6541 — **Sharon Johnson Coleman**, *Judge*.

ARGUED JUNE 2, 2015 — DECIDED JULY 1, 2015

Before POSNER, EASTERBROOK, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*. The plaintiffs, five residents of buildings in Chicago that are privately owned, received housing vouchers from the Chicago Housing Authority to enable them to rent apartments in these buildings. Their suit, which names as defendants the CHA plus two building owners, complains that the Authority is complicit in— indeed ultimately responsible for—a deprivation by the building owners of the plaintiffs' constitutionally protected

privacy. The plaintiffs sought and were denied a preliminary injunction in the district court, and they appeal the denial to us.

The defendant building owners require their tenants to be tested annually for illegal drugs; passing the test is a condition of a tenant's being allowed to renew his or her lease for another year. The requirement applies to all tenants, not just those who might be suspected of using illegal drugs. If as the defendants argue the owners are alone responsible for the testing requirement, there is no constitutional violation, because the owners are private citizens rather than employees of the state or city. As the Supreme Court explained in *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982), "constitutional standards are [applicable] only when it can be said that the State is responsible for the specific conduct of which the plaintiff complains. The importance of this assurance is evident when, as in this case, the complaining party seeks to hold the State liable for the actions of private parties. … [A] State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." If, however, the CHA, a government agency, is responsible for the compulsory drug testing of which the tenants complain (we'll assume that shared responsibility would be enough), then unless all the tenants have consented to the tests, the agency would have to justify its drug-testing policy as "reasonable" within the current meaning of the Fourth Amendment, made applicable to state agencies, such as the CHA, by interpretation of the due process clause of the Fourteenth Amendment. See *Board of Education v. Earls*, 536 U.S. 822

(2002); *Skinner v. Railway Labor Executives' Association*, 489 U.S. 602 (1989).

The district court denied the plaintiffs' motion for a preliminary injunction on the ground that the drug-testing policy was private rather than state action and therefore beyond the reach of the Fourth Amendment. The court denied the plaintiffs' motion on a second ground as well—that they had consented to the testing—but we need not reach that issue and will express no view on it.

A number of the tenants in the buildings are former residents of public housing owned by the CHA. Beginning in 2000 the CHA began implementing a "Plan for Transformation" of its public housing developments. The Plan contemplated replacing a number of housing developments that the CHA owned with privately owned, mixed-income developments. Residents who had previously lived in CHA-owned units could apply for admission to one of the new developments, or they could apply for a voucher usable to obtain housing in privately owned buildings not involved in the transformation. The CHA would continue to subsidize the rents of tenants relocating to these buildings from traditional public housing.

Each of the new developments is overseen by a "working group" that controls, among other things, the criteria for admission to the development. The CHA appoints one representative to each of these working groups, but does not control them. The agency does not require the building owners to institute annual (or any) mandatory drug tests for residents. Nor does it yank housing vouchers from residents who flunk such a test. Nor do the working groups do any of those things. Although a number of the buildings in the re-

development program do require such tests, others do not, and as a result only a slight majority (56 percent) of the tenants in the entire array of buildings are required to take them.

People eligible for subsidized housing in buildings in the transformation program have some, though limited, choice about whether to become tenants of a building that does, or a building that does not, require such tests. Their choice is necessarily limited because vacancies are limited. Many of the buildings have lengthy waiting lists, and in some buildings the lists are closed. CHA, "Find Public Housing: Your Search for 'Closed' Returned 58 Properties," www.thecha.org/residents/public-housing/find-public-housing/?wls=0 (visited June 29, 2015).

The CHA does not disapprove of drug testing in the mixed-income developments; indeed there is at least some evidence that it thinks it a good idea (as do some tenants, who prefer living in buildings that require the tests; presumably they are persons who neither use illegal drugs themselves nor wish to live in the same building with people who do). But the plaintiffs are mistaken to equate governmental encouragement of private "searches" (the drug tests are searches within the judicially construed meaning of the Fourth Amendment) with the government's conducting searches. Government officials and agencies spend a great deal of time urging private persons and firms and other institutions to change their behavior (for example, to adopt healthier diets or use public transit more) without backing up their urging with coercion or the threat of it. Physically fit young men and women are encouraged to enlist in the armed forces, but there is no longer a draft, and so there is

no coercion to enlist and it would be absurd to claim that encouraging enlistment is the equivalent of forcing people to serve. A President will sometimes ask people to pray for something, but his request is not compulsion either. We noted in *Freedom from Religion Foundation, Inc. v. Obama*, 641 F.3d 803 (7th Cir. 2011), that since people are free to ignore the President's call for prayer, no one had standing to sue him for violating the Constitution by forcing religion down people's throats.

Drugs are a plague on the poor in Chicago, and it is certainly permissible for the organ of city government that is responsible for the living conditions of the City's poor to urge private measures to reduce addiction to those drugs and reduce the commerce in those drugs that fosters and feeds the addiction; but again, urging is not requiring.

The plaintiffs argue that the "working groups have never acted over CHA opposition." But the working groups do not require drug testing; and since so many of the buildings at issue do not require such tests, it follows that the CHA is not coercing building owners to require testing. The plaintiffs do not explain why, if the CHA requires drug testing in some buildings, it doesn't in others; and this is evidence that the decision whether to require the testing is indeed left to the building owners rather than imposed on them by government. Further evidence is that one of the two building owners that are defendants in this case along with the CHA— namely Holsten Management Corporation—instituted drug testing in its buildings in the mid-1990s, years before it had any involvement with the CHA, and it continues to require drug testing in buildings that it owns that have no involvement with the agency.

It's true that the owner of one mixed-income development declared that it was imposing a requirement of drug testing at the request of the CHA. It said it had "never imposed a drug testing requirement at any of our properties; we believe that we have created and maintained good places to live without drug testing policies. However, we are including one here … because the CHA and members of the community have told us to do so." (The "members of the community" would be members of the development's working group, which has to approve a building owner's tenant-selection plan.)

But request and command are not synonyms. As we said, government does a lot of urging without backing it up by force of law. The plaintiffs have failed to show that either "members of the community" or the CHA commanded the building owner to require drug testing. By "told us to do so" the owner may simply have been saying—to whoever questioned the decision to institute drug testing—"don't blame us, we're just doing what we've been told to do."

Finally, as the district court emphasized, none of the plaintiffs had requested transfer from the drug-testing building in which he or she currently resides to a building that does not require drug testing. The plaintiffs argue that it would have been futile for them to seek transfer, noting that a CHA employee had in 2009 emailed an employee of the federal Department of Housing and Urban Development that a resident who refused to take a drug test would not be eligible for transfer to another building. But a representative of the CHA testified that his agency would have approved such a request, and the district judge credited this represen-

tation in denying the plaintiffs' motion for a preliminary in-junction.

The motion was properly denied.

AFFIRMED.