In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-3709

WILLIAM A. BRANDT, JR.,

*Plaintiff-Appellant,*

*v.*

VILLAGE OF WINNETKA, ILLINOIS,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 588—**Robert M. Dow, Jr.**, *Judge.*

ARGUED MAY 21, 2010—DECIDED JULY 20, 2010

Before EASTERBROOK, *Chief Judge*, and BAUER and TINDER, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. In 1996 William A. Brandt, Jr., held a fundraising event for President Clinton at his house in Winnetka, Illinois. The Secret Service asked Winnetka to provide assistance to enhance the President's security. The expense of complying with that request led the Village to enact in 2000 an ordinance requiring people whose events occasion the need for

such services to bear their costs. Chapter 5.66 of the Winnetka Code imposes on the events' sponsors the cost of all "special services," such as extra police, closing streets, and rerouting traffic. The ordinance has exceptions— official presidential visits, some gatherings open to the public without charge, and events sponsored by the Village—but private invitation-only receptions such as most political fundraisers are subject to this fee.

Since 2000 many political officials and candidates for office have been to Brandt's home. Senator Hillary Clinton was there in 2005 and was to come again in 2008, though the latter event was cancelled after the Democratic Party chose a different presidential candidate. Brandt hosted fundraising events for Lisa Madigan, the Attorney General of Illinois, and Senator Al Franken of Minnesota. Many other political officials and candidates for office have enjoyed Brandt's hospitality, and his money-raising prowess, since the Village enacted its ordinance. He has not been asked to pay one cent for special services. The Village has sent only three bills on account of political events, all to residents other than Brandt: one for a visit by President Bush in 2004, and two for visits by First Lady Laura Bush. The bill for President Bush's event was some $75,000, after requests by the Secret Service led the Village to put most of its police force in the field (at overtime rates) and ask for assistance from neighboring municipalities. The Republican National Committee picked up the tab. The visits by Laura Bush led to bills of $6,500 and $2,500; a political committee paid one of these and perhaps both (the record is unclear).

Although he has never been billed for any special services, Brandt filed this suit under 42 U.S.C. §1983 and asked the district court to issue a declaratory judgment that the ordinance violates the first amendment by "chilling" his willingness to invite political officials and candidates to the Village. Brandt contends that he uses his home not only to raise money but also to inform guests that he supports the candidates' political positions. He has not identified any person whom he would have invited but for the risk that he would be hit with a bill that the candidate's committee wouldn't pay (recall that he invited Hillary Clinton while she was running for President, when the Secret Service was likely to ask the Village to provide special services), but he insists that there is bound to be someone in that category eventually. He also contends that the ordinance discriminates on the basis of viewpoint, because the more controversial the candidate's political speech the higher the costs of crowd control are likely to be. That creates a form of hecklers' veto, Brandt maintains. See *Forsyth County v. Nationalist Movement*, 505 U.S. 123 (1992). The district court doubted that Brandt suffers any injury, however, and dismissed the suit for want of standing. 2009 U.S. Dist. LEXIS 91263 (N.D. Ill. Sept. 30, 2009).

The district court's opinion has three themes: that Brandt will not be injured; that how the ordinance will work for Brandt and the candidates he favors is uncertain, making the dispute unripe; and that it is unwise to exercise discretion to issue a declaratory judgment that may occasion premature constitutional adjudication. The first of these themes concerns the existence of a case

or controversy under Article III; the second and third do not, and concern the appropriate exercise of discretion rather than the limits of judicial power. See *National Park Hospitality Ass'n v. Department of Interior*, 538 U.S. 803 (2003); *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). Although more of the district judge's opinion is devoted to discussing when and how discretion should be exercised than to discussing the existence of standing, the judgment states that the suit is dismissed for lack of jurisdiction. That was a misstep.

Standing exists when the plaintiff suffers an actual or impending injury, no matter how small; when that injury is caused by the defendant's acts; and when a judicial decision in the plaintiff's favor would redress that injury. See, e.g., *Summers v. Earth Island Institute*, 129 S. Ct. 1142 (2009); *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 102–04 (1998). Brandt is a political promoter; his home in Winnetka has hosted guests whose protection led to "special services" within the scope of the ordinance. Had it been in force when President Clinton was there in 1996, Brandt would have received a demand for payment. Senator Clinton would have come in 2008 had she been nominated for President. Although a court cannot be *sure* that Brandt will again have a guest whose protection detail will ask the Village for "special services," the probability is materially greater than zero.

Injury need not be certain. Any pre-enforcement suit entails some element of chance: perhaps the plaintiff will desist before the law is applied, perhaps the law will be

repealed, or perhaps the law won't be enforced as written. But pre-enforcement challenges nonetheless are within Article III. See *Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967); *Pierce v. Society of Sisters*, 268 U.S. 510 (1925); *520 South Michigan Avenue Associates, Ltd. v. Devine*, 433 F.3d 961 (7th Cir. 2006). See also *Alliant Energy Corp. v. Bie*, 277 F.3d 916 (7th Cir. 2002); Daniel A. Farber, *Uncertainty as a Basis for Standing*, 33 Hofstra L. Rev. 1123 (2005). And because the ordinance imposes the fee on the event's sponsor, the fact that a candidate's political committee may pay does not eliminate the injury. The committee has no legal obligation; and, if it does pay, this reduces the net proceeds of the fundraiser and thus diminishes the candidate's willingness to visit Winnetka and curtails the number of occasions on which Brandt can voice his political opinions to visitors in his home. Causation and redressability also are established, so Brandt has standing to sue.

But the district judge did not abuse his discretion when concluding that adjudication would be premature. (Abuse of discretion is the standard of appellate review when a district court decides that a dispute's resolution should be postponed and on that ground declines to issue a declaratory judgment. See *Envision Healthcare, Inc. v. PreferredOne Insurance Co.*, 604 F.3d 983 (7th Cir. 2010).) Courts should not issue declaratory judgments until the dispute is ripe, see *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007), and must avoid unnecessary constitutional adjudication.

Brandt describes his challenge as one to the ordinance as applied—for as written the ordinance does not discrimi-

nate on account of any speaker's viewpoint. There is no reason why a municipality can't bill householders and others whose activities make extra demands on municipal services. Brandt has every right to support any candidate he pleases and express his own political views, but no right to have his neighbors underwrite the expense. The ordinance is not limited to political speech; it also applies to movie-makers who want to use the Village as a set, sponsors of sporting events, and additional persons whose activities require the police to close streets or provide other "special services." So Brandt was prudent to concede that this ordinance cannot be declared invalid "on its face" (which is to say, in all possible applications).

Yet it is hard to see how a court can evaluate an as-applied challenge sensibly until a law *is* applied, or application is soon to occur and the way in which it works can be determined. Cf. *Lear Corp. v. Johnson Electric Holdings, Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) (court should not issue a declaratory judgment resolving a dispute about indemnity under an insurance contract until it has been established how much the insured must pay, and for what acts). Predictions, such as Brandt's proposition that bills are bound to be higher when the candidate's views are more contentious, need to be proved. We cannot take judicial notice that the Secret Service requires more local law-enforcement assistance as a President's popularity falls or a candidate for President struggles in the polls. Indeed, this record does not contain any evidence that public opposition to a President's (or presidential candidate's) political views

has the slightest effect on the cost of the work that the Secret Service asks a municipality to perform. Nor does the record show that any candidate has declined Brandt's invitation because Winnetka's ordinance reduces the net proceeds of political fundraisers. The Republican National Committee paid the bill for President Bush's fundraiser in 2004 but has not joined this suit, nor has any other political organization intervened as a plaintiff. The district court did not abuse its discretion in thinking that this challenge is too abstract to warrant constitutional adjudication. (*Commodity Trend Service, Inc. v. CFTC*, 149 F.3d 679 (7th Cir. 1998), on which Brandt relies, dealt with a pre-enforcement challenge to a business regulation, where, as in *Abbott Laboratories*, enforcement was highly probable and the effects much easier to anticipate than those of Winnetka's ordinance.)

The judgment of the district court is modified to provide that the suit is dismissed in an exercise of the court's discretion not to issue a declaratory judgment, and as modified the judgment is affirmed.