**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

COUNTRYWIDE HOME LOANS, INC.;
BAC HOME LOANS SERVICING, LP,
       *Plaintiffs-Appellees.,*

       v.

MORTGAGE GUARANTY INSURANCE
CORPORATION,
       *Defendant-Appellant.*

No. 10-15996

D.C. No.
3:10-cv-00233-JSW

OPINION

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted
May 13, 2011—San Francisco, California

Filed June 15, 2011

Before: Betty B. Fletcher and Sidney R. Thomas, Circuit
Judges, and Lee H. Rosenthal, District Judge.*

Opinion by Judge B. Fletcher

---

*The Honorable Lee H. Rosenthal, District Judge for the U.S. District
Court for Southern Texas, Houston, sitting by designation.

## COUNSEL

David E. Weiss, Raymond A. Cardozo, and Roxanne M. Garibay, Reed Smith LLP, San Francisco, California; and David M. Halbreich, Reed Smith LLP, Los Angeles, California; for the plaintiffs-appellees.

Ellen Cirangle and Jonathan Sommer, Stein & Lubin LLP, San Francisco, California; Joseph C. Smith, Jr., Bartlit Beck Herman Palenchar & Scott LLP, Denver, Colorado; and Jeffrey A. Hall, Andrew C. Baak, and Ashley C. Keller, Bartlet Beck Herman Palenchar & Scott LLP, Chicago, Illinois; for the defendant-appellant.

---

## OPINION

B. FLETCHER, Circuit Judge

Appellant Mortgage Guaranty Insurance Company ("MGIC") appeals the district court's decision to remand this suit back to state court pursuant to its discretion under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202 ("DJA"). MGIC argues that the district court was required to consider its motion under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ("FAA"), before exercising its discretion under the DJA. We agree. We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand.

### I.

Appellant MGIC and Appellees Countrywide Home Loans Insurance Company and BAC Home Loans Servicing, LP (collectively "Countrywide") are parties to an insurance agreement referred to as the "Flow Policy." Under the terms of the Flow Policy, MGIC insures Countrywide against borrower defaults on Countrywide mortgage loans. The Flow

Policy allows MGIC to cancel or to rescind coverage for loans involving material misrepresentations. The Flow Policy also provides for a reduction in the claimed loss amount in certain cases of "fraud, misrepresentation, or negligence" on the part of Countrywide. On the purported basis of these fraud provisions, MGIC rescinded or denied coverage on several Countrywide claims submitted between 2006 and 2008.

In addition, the Flow Policy contains an arbitration clause, which states that

> all controversies, disputes, or other assertions of liability or rights arising out of or relating to this Policy, including the breach, interpretation or construction thereof, shall be settled by arbitration. Notwithstanding the foregoing, [MGIC] or [Countrywide] both retain the right to seek a declaratory judgment from a court of competent jurisdiction on matters of interpretation of the [Flow] Policy.

On December 17, 2009, Countrywide filed a declaratory judgment action in California Superior Court contesting MGIC's denial of its claims. In its Complaint, Countrywide states that it seeks "declaratory relief . . . so that the [Flow Policy] language can be properly interpreted." On January 19, 2010, MGIC timely removed the action under 28 U.S.C. § 1441(b) to the United States District Court for the Northern District of California. The parties do not dispute that, pursuant to 28 U.S.C. § 1332, the district court had diversity jurisdiction over the suit. MGIC is a Wisconsin corporation with its principal place of business in Wisconsin; Countrywide Home Loans, Inc. is a New York corporation with its principal place of business in California; and BAC Home Loans Servicing is a Texas limited partnership with its principal place of business in Texas. The amount in controversy among the parties is greater than $75,000. Accordingly, this case was properly removed. *See* 28 U.S.C. § 1332; *id.* § 1441(b).

Countrywide then moved to remand, arguing that the court should "exercise its broad discretion under the [DJA]" and "decline jurisdiction and remand the case to state court." MGIC opposed the remand and filed a Motion to Stay the Action Pending Resolution through Arbitration under § 3 of the FAA. MGIC also filed an arbitration demand against Countrywide before the American Arbitration Association, seeking "resolution of the over 1400 loans in dispute between the parties."

On March 30, 2010, the district court granted Countrywide's motion to remand and denied without prejudice to refiling in state court MGIC's motion to stay pending arbitration. The District Court reasoned that the DJA "grants courts discretionary jurisdiction to declare the rights of litigants," and that "several factors weigh in favor of abstention." The court noted that the FAA provides no independent basis for federal jurisdiction, and that the power to enforce an arbitration clause only exists "when federal jurisdiction is otherwise established." The court further reasoned that the arbitrability of the action was "more properly addressed in state court."

On April 27, 2010, MGIC timely filed a notice of appeal of the district court's decision to remand without reaching the merits of its FAA motion. Because the district court's discretionary remand pursuant to the DJA constitutes an immediately appealable "final decision" under the collateral order doctrine, *see Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 715 (1996), we have jurisdiction under 28 U.S.C. § 1291. *See Snodgrass v. Provident Life & Accident Ins. Co.*, 147 F.3d 1163, 1166 (9th Cir. 1998).

## II.

[1] The question presented by MGIC's appeal is whether a district court's discretion under the DJA allows the court to decline to consider and to award relief under the FAA. This question is one of first impression in this circuit. MGIC

argues that the discretion afforded under the DJA does not allow the district court to abstain from deciding a request for relief under the FAA. Countrywide's position is that the issue of arbitrability should not be excepted from a federal court's well-established DJA discretion to decline to hear an action seeking declaratory relief.

## A.

**[2]** We first examine the discretion granted to federal courts under the DJA. Generally, district courts have a "virtually unflagging obligation . . . to hear jurisdictionally sufficient claims." *Snodgrass*, 147 F.3d at 1167 (internal citations and quotation marks omitted). The DJA relaxes this obligation in cases where a party seeks declaratory relief. It provides that "any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added).

Both the Supreme Court and this court have, at times, characterized the discretion provided under the DJA as the ability to "accept" or "decline" "discretionary" jurisdiction, or to decide whether to "exercise jurisdiction," in an action seeking declaratory relief. *See Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494 (1942) ("Although the District Court had jurisdiction of the suit under the [DJA], it was under no compulsion to exercise that jurisdiction."); *United Nat. Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1112 (9th Cir. 2001) (analyzing whether the court's "jurisdiction over actions with both declaratory and monetary claims remained discretionary" or whether the non-declaratory claims triggered "mandatory" jurisdiction); *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1227 (9th Cir. 1998) (holding that, "[W]hen constitutional and statutory jurisdictional prerequisites to hear a case brought pursuant to the [DJA] have been satisfied, the district court may proceed with consideration of the action without sua

sponte addressing whether jurisdiction should be declined."); *Snodgrass*, 147 F.3d at 1166-67 (reviewing the "district court's decision to decline jurisdiction under the [DJA]"). Understandably, then, the district court's remand order invokes and relies upon this "discretionary jurisdiction" language.

**[3]** As MGIC correctly points out, however, it is imprecise to describe the discretion provided by the DJA in terms of jurisdiction. A court's jurisdiction is distinct from its remedial powers. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998). In passing the DJA, "Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995) (noting that "[b]y the Declaratory Judgment Act, Congress sought to place a *remedial* arrow in the district court's quiver" and that "[c]onsistent with the non-obligatory nature of *the remedy*, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment" (emphasis added)). Therefore, while the DJA expanded the scope of the federal courts' remedial powers, it did nothing to alter the courts' jurisdiction, or the "right of entrance to federal courts." *Skelly Oil*, 339 U.S. at 671. Put another way, the DJA gave district courts the discretion to provide a type of relief that was previously unavailable, but did not "impliedly repeal[ ] or modif-[y]" the general conditions necessary for federal adjudication (e.g., a federal question or diversity of citizenship). *Id.* at 672.

The Seventh Circuit recently made clear this distinction. In *Brandt v. Village of Winnetka*, 612 F.3d 647 (7th Cir. 2010), the court affirmed the district court's decision to dismiss a declaratory judgment action. The court explained, however, that the district court's dismissal "for lack of jurisdiction" was a "misstep," because the exercise of discretion as to whether to issue a declaratory judgment does not speak to "judicial power." *Id.* at 649. The court accordingly modified the district

court's judgment "to provide that the suit is dismissed in exercise of the court's discretion not to issue a declaratory judgment." *Id.* at 650-51.

**[4]** We agree with the Seventh Circuit's analysis. Federal courts' regular use of "discretionary jurisdiction" language implicitly and inaccurately suggests that the DJA confers jurisdiction that the federal courts have the discretion to decline. The DJA, however, does not confer jurisdiction, and therefore also does not afford the opportunity to decline it. The DJA gives district courts the discretion to decline to exercise the conferred remedial power, *Wilton*, 515 U.S. at 286, but in no way modifies the district court's jurisdiction, which must properly exist independent of the DJA. In other words, federal courts have discretion under the DJA only as to whether to award declaratory relief pursuant to the jurisdiction that they must properly derive from the underlying controversy between the litigants. Generally, then, when courts refer to a district court's discretion to "exercise" or "accept" jurisdiction under the DJA, they invoke the court's discretion to provide a declaratory remedy pursuant to its otherwise proper subject matter jurisdiction over a dispute.

**[5]** Here, as we previously noted, the parties do not dispute that the district court had proper diversity jurisdiction over this case. The district court's exercise of its remedial discretion under the DJA did nothing to alter its subject matter jurisdiction over the underlying controversy between the parties.

**B.**

In light of our conclusion that the district court's proper subject matter jurisdiction remained unaffected by the DJA, we now turn to the court's obligation under the FAA. MGIC's motion, filed before the district court had ruled on Countrywide's motion to remand, sought under § 3 of the FAA a stay of the declaratory judgment action pending arbitration.

**[6]** First, the FAA, like the DJA, does not confer federal jurisdiction, but rather requires an "independent jurisdictional basis." *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581-82 (2008). In order for a court to adjudicate an FAA claim, then, it must have proper jurisdiction over the conflict even assuming the parties had never entered into an agreement to arbitrate. Here, as explained above, the district court did have independent diversity jurisdiction. Therefore, the district court had the *power to adjudicate* MGIC's FAA motion, regardless of how it exercised its *discretion to award relief* under the DJA.

**[7]** Second, unlike the DJA, the FAA gives the adjudicating court no discretion as to whether to award relief. The statute provides that when a party seeks relief under § 3 of the FAA, "the court . . . , upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3 (emphasis added). As the Supreme Court has recognized, the language of the FAA leaves no room for discretion: "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); *see also AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1748 (2011) (noting that FAA "§ 3 *requires* courts to stay litigation of arbitral claims pending arbitration of those claims 'in accordance with the terms of the agreement' " (emphasis added)); *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004) (noting that the FAA limits a court's discretion in ordering arbitration). The express terms of the statute do not allow a district court to abstain from granting relief in cases where its jurisdiction is proper.

**[8]** We therefore hold that the FAA's mandatory terms, combined with the court's proper diversity jurisdiction,

required the district court to reach the merits of MGIC's motion before it remanded the suit back to state court.

Countrywide's primary argument in opposing this conclusion is that, although "the district court had the power to adjudicate [this] case," the DJA provided it with "the discretion to decline to exercise that power." DJA discretion, argues Countrywide, "necessarily encompasses" the issue of arbitrability, which is "embraced within and dependent on the declaratory relief claim." Notably, Countrywide's argument fails to address the mandatory "shall" language of the FAA, which the Supreme Court has interpreted to require district courts to consider the propriety of arbitration in cases where jurisdiction is proper.[1] In addition, we are not persuaded that the discretion as to whether to award a declaratory remedy "necessarily encompasses" the issue of arbitrability. If MGIC, rather than moving for a stay under § 3 of the FAA, had brought directly to federal court a petition under § 4 of the FAA that was unattached to Countrywide's declaratory suit, we believe that the district courts's diversity jurisdiction would allow it to consider the merits of this petition.[2] This argument, therefore, is unavailing.

(Text continued on page 8187)

---

[1]Countrywide argues in its brief that § 3 of the FAA "refers only to actions initiated in federal court and does not specify the district court's obligations in a removed action." There is simply no basis, however, for the conclusion that the statute lacks its usual controlling effect when a motion is brought in a removed federal suit as opposed to one originally filed in federal court. In either situation, proper federal subject matter jurisdiction is required. *See, e.g.*, *Bernhardt v. Polygraphic Co. of America*, 218 F.2d 948, 951 (2d Cir. 1955), *rev'd on other grounds*, 350 U.S. 198 (1956); *Cullen v. Paine, Webber, Jackson & Curtis, Inc.*, 587 F. Supp. 1520, 1522 (N.D. Ga. 1984) ("The fact that this case was removed from state to federal court does not affect this court's mandate under 9 U.S.C. § 3; . . . it must order a stay notwithstanding the fact of removal.").

[2]Indeed, the question of whether a request for arbitration is independent from a request for declaratory relief raises an alternative analysis under which we reach the same conclusion. In *Snodgrass v. Provident Life and Accident Insurance Company*, 147 F.3d 1163, 1166-68 (9th Cir. 1998), we

provided guidance as to when a district court, faced with declaratory and non-declaratory claims for relief, should remand or dismiss pursuant to its discretion under the DJA. In that case, we held that "[t]he appropriate inquiry for a district court in a Declaratory Judgment Act case is to determine whether there are claims in the case that exist independent of any request for purely declaratory relief, that is, claims that would continue to exist if the request for a declaration simply dropped from the case." *Snodgrass*, 147 F.3d at 1167-68. We reasoned that if such non-declaratory claims provide an "independent basis for jurisdiction[,]" then "the district court's dismissal [or remand] under the Declaratory Judgment Act constitute[s] an abuse of discretion." *Id.* at 1167. We refined the *Snodgrass* analysis in *United National Insurance Company v. R&D Latex Corporation*, 242 F.3d 1102 (9th Cir. 2001). There, we held that the proper analysis in deciding whether to remand a case under the DJA is "whether the claim for [non-declaratory] relief is independent in the sense that it could be litigated in federal court even if no declaratory claim had been filed. In other words, the district court should consider whether it has subject matter jurisdiction over the [non-declaratory] claim alone, and if so, whether that claim must be joined with one for declaratory relief." *Id.* at 1113.

Although MGIC moved for a stay of the declaratory judgment action pending arbitration under § 3 of the FAA, it could have sought to compel arbitration independent of Countrywide's suit. A federal district court can entertain a direct petition to compel arbitration under 9 U.S.C. § 4, if, after "looking through" the petition, it determines that the underlying substantive controversy between the parties triggers federal subject matter jurisdiction. *Vaden v. Discover Bank*, 129 S. Ct. 1262, 1273-74 (2009). Here, it is undisputed that the district court did have subject matter jurisdiction over the underlying insurance dispute between the parties, as the parties are completely diverse and the amount in controversy exceeds $75,000. It therefore had independent subject matter jurisdiction to entertain a § 4 petition to compel arbitration raised separately from the underlying controversy. And because the district court had jurisdiction to consider such a petition under the FAA, MGIC's request for compulsion of arbitration under the FAA technically constitutes an independent basis upon which the court could "exercise its jurisdiction." Indeed, it seems that, even if Countrywide's DJA suit had never been filed, MGIC's request for FAA relief could have been litigated in federal court. *See Vaden*, 129 S. Ct. at 1274 n.13.

Thus, MGIC's FAA motion probably qualifies as an independent, non-declaratory claim under *Snodgrass* and *R&D Latex*; as we have shown, it need not be joined with a claim for declaratory relief and provides a

**[9]** Countrywide also points out that, in refusing to allow the FAA to independently confer federal jurisdiction, Congress clearly considered state and federal courts equally capable of adjudicating FAA claims and deliberately declined to guarantee litigants a federal forum. While this contention may be true, a federal court nonetheless maintains a basic obligation to consider the merits and to award relief in cases where its jurisdiction is proper. *See Snodgrass*, 147 F.3d at 1167. This obligation has particular force under the FAA, which expressly makes the provision of relief mandatory. *See Dean Witter Reynolds*, 470 U.S. at 218. Thus, while the FAA does not guarantee a federal forum, it does require a federal court to decide an FAA motion that is properly brought before it.

## III.

**[10]** Because the federal court's jurisdiction was proper, it was required under the mandatory terms of the FAA to consider MGIC's motion before it remanded the suit pursuant to its discretion under the DJA. We therefore **REVERSE** the district court's order of remand and **REMAND** for its consideration of MGIC's FAA motion.

---

wholly separate basis on which the court could "exercise" its diversity jurisdiction. *See R&D Latex*, 242 F.3d at 1113. Because, however, the mandatory language of the FAA presents a clearer and more narrow disposition of the case, we do not rest our holding on this analysis.