In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-1083

CATHLENE SILHA, *et al.*,

*Plaintiffs-Appellants*,

*v.*

ACT, INC. and THE COLLEGE BOARD,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 0505 — **Amy J. St. Eve**, *Judge*.

ARGUED SEPTEMBER 18, 2015 — DECIDED NOVEMBER 18, 2015

Before BAUER, KANNE, and ROVNER, *Circuit Judges*.

KANNE, *Circuit Judge*. Every year, millions of high school students take the American College Test ("ACT") and Scholastic Aptitude Test ("SAT") with the ultimate aim of gaining admission to a college or university. To advance this goal and as part of the examination process, some student test-takers authorize the relevant testing agencies to "send" or "share" their personally identifiable information ("PII") with educational organizations through an information exchange

program. Plaintiff-appellants, a group of former participants in the information exchange programs, allege that they were harmed because the testing agencies did not disclose that the students' PII was actually sold to the educational organizations for profit. We hold that plaintiff-appellants' claims lack standing under Article III of the Constitution and therefore affirm the judgment of the district court.

## I. BACKGROUND

ACT, Inc. and The College Board ("Defendants") are national testing agencies that administer the ACT and SAT college entrance exams, respectively, for a fee. When a student signs up to take a test, Defendants obtain some of the student's PII, including name, home address, gender, birthdate, high school, email address, and phone number, along with other identifiers.

In connection with the examinations, Defendants offer optional programs to facilitate the exchange of information between student test-takers and educational organizations, which include colleges and universities, scholarship organizations, and government agencies. ACT's program is called the Education Opportunity Service, and The College Board's program is called the Student Search Service. To participate in ACT's program, students must affirmatively respond "Yes" to authorize ACT to "send" certain PII—name, address, gender, high school, email address, racial/ethnic background, and intended college major—to participating educational organizations. Similarly, to participate in The College Board's program, test-takers must affirmatively respond "Yes" to authorize The College Board to "share" or "send" certain PII—name, address, sex, birthdate, school, grade level, ethnic group, email address, and intended college ma-

jor—to participating educational groups. Both information exchange programs are optional and free of charge to participants. Both programs disclose the categories of information released, as well as the types of educational organizations that may receive this information.

On January 23, 2014, a group of former information exchange program participants—Cathlene Silha,[1] Arie Wolf, Karoline Kamzic, and Elyse Stevens ("Plaintiffs")—filed a putative class action complaint against Defendants. They alleged that Defendants deceived them and the putative class by concealing the sale or licensing of students' PII under the cover of the information exchange programs. Specifically, Plaintiffs claimed that Defendants sold or licensed their PII for a profit of at least $.33 per student, per buyer. Plaintiffs relied on several theories of relief, including unfair and deceptive business practices, breach of contract, invasion of privacy, and unjust enrichment. The district court's jurisdiction (apart from the Article III standing issue to which we will turn) was proper pursuant to 28 U.S.C. § 1332(d)(2).

Defendants responded on March 28, 2014, by filing motions to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

On September 2, 2014, the district court granted Defendants' motions to dismiss under Rule 12(b)(1), finding that

---

[1] We note that there is a discrepancy regarding the spelling of plaintiff Silha's first name. In their brief, plaintiff-appellants spell the name as "Cathleen Silha." In contrast, the original complaint and district court judgment spell the name as "Cathlene Silha." For the purposes of this opinion, we spell this plaintiff's name as "Cathlene Silha."

Plaintiffs did not fulfill their burden of establishing Article III standing. The district court addressed each of the Plaintiffs' three theories of injury: "(1) the examination fee paid to take the ACT and SAT tests; (2) the diminished value of Plaintiffs' PII based on Defendants' sale, licensing, and distribution of this information; and (3) the fees that third parties paid to Defendants for Plaintiffs' PII." *Silha, et al. v. ACT, Inc. and The College Board*, No. 14 C 0505, slip op. at 3 (N.D. IL. Sep. 2, 2014).

First, the district court rejected the alleged harm of examination fees because there was no "causation—a fairly traceable connection" between Defendants' conduct and Plaintiffs' injury. *Id.* The district court found that Defendants' sale of Plaintiffs' PII "did not cause" Plaintiffs to pay the examination fees because Plaintiffs paid those fees to take the examinations and eventually gain admission to college. *Id.*

Second, the district court rejected the claimed injury of diminished value of PII because Plaintiffs failed to "allege that they have the ability to sell their personal information or that Defendants' conduct foreclosed them from entering into a 'value for value transaction' relating to their PII." *Id.*

Third, the district court rejected the alleged injury of fees paid by third parties for Plaintiffs' PII because "a plaintiff's injury must be based on the plaintiff's loss, not the defendant's gain." *Id.* at 4. The district court found that the Plaintiffs' had not alleged that "they suffered an economic loss, [only] that [Defendants] profited." *Id.*

Subsequently, on September 22, 2014, Plaintiffs moved to alter or amend the district court's judgment, pursuant to Federal Rules of Civil Procedure 59(e) or 60(b)(6). At the

same time, Plaintiffs sought leave to amend their original complaint in response to the district court's dismissal for lack of injury. The proposed amended complaint included new allegations that Plaintiffs had the opportunity to sell their PII. Plaintiffs also sought to add a new claim under the Illinois Right of Publicity Act.

On December 15, 2014, the district court denied Plaintiffs' motion, concluding that nothing in the proposed amended complaint would plausibly establish injury in fact. Furthermore, the district court found that Plaintiffs' proposed right to publicity claim was time-barred. This appeal followed.

## II. ANALYSIS

We review a district court's dismissal for lack of subject matter jurisdiction *de novo*. *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 691 (7th Cir. 2015); *Apex Dig., Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009).

Article III of the Constitution limits federal judicial power to certain "cases" and "controversies," and the "irreducible constitutional minimum" of standing contains three elements. *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 559–60 (1992) (internal citations and quotations marks omitted).

To establish Article III standing, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–181 (2000) (citing *Lujan*, 504 U.S. at 560–61). As the party invoking federal ju-

risdiction, a plaintiff bears the burden of establishing the elements of Article III standing. *Lujan*, 504 U.S. at 561; *Remijas*, 794 F.3d at 691–92.

In evaluating a challenge to subject matter jurisdiction, the court must first determine whether a factual or facial challenge has been raised. *Apex Dig.*, 572 F.3d at 443.

A factual challenge contends that "there is *in fact* no subject matter jurisdiction," even if the pleadings are formally sufficient. *Id.* at 444 (emphasis in original) (internal citations and quotation marks omitted). In reviewing a factual challenge, the court may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists. *Id.*

In contrast, a facial challenge argues that the plaintiff has not sufficiently "*alleged* a basis of subject matter jurisdiction." *Id.* at 443 (emphasis in original). In reviewing a facial challenge, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Id.* at 443–44.

Here, Defendants' Rule 12(b)(1) motion is properly understood as a facial challenge because they contend that Plaintiffs' complaint lacks sufficient factual allegations to establish standing.

Before addressing Plaintiffs' arguments, we take this opportunity to clarify the standard for facial challenges to subject matter jurisdiction under Rule 12(b)(1). The Supreme Court has held that "each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." *E.g.*, *Lujan*, 504 U.S. at 561; *see also Apex Dig.*, 572 F.3d at 443 (quoting *Lujan*, 504

U.S. at 561). Moreover, in evaluating whether a complaint adequately pleads the elements of standing, courts apply the same analysis used to review whether a complaint adequately states a claim: "[C]ourts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *see also Apex Dig.*, 572 F.3d at 443; *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3rd Cir. 2012).

The Supreme Court clarified the standard for pleading a claim in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009):

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) (internal citations and quotations marks omitted).

To assess whether a complaint states a plausible claim of relief, the Court articulated a two-pronged approach in which a court (1) first identifies the well-pleaded factual allegations by discarding the pleadings that are "no more than conclusions" and (2) then determines whether the remaining well-pleaded factual allegations "plausibly give rise to an entitlement of relief." *Iqbal*, 556 U.S. at 679.

Because *Lujan* mandates that standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof," it follows that the *Twombly*-

*Iqbal* facial plausibility requirement for pleading a claim is incorporated into the standard for pleading subject matter jurisdiction. *Lujan*, 504 U.S. at 561. Therefore, we join many of our sister circuits and hold that when evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly-Iqbal*'s "plausibility" requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6). *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243–44 (3rd Cir. 2012); *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011); *Román-Oliveras v. P. R. Elec. Power Auth.*, 655 F.3d 43, 45 n.3, 49 (1st Cir. 2011); *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008); *Stalley v. Catholic Health Initiatives,* 509 F.3d 517, 521 (8th Cir. 2007). *But see Maya v. Centex Corp.*, 658 F.3d 1060, 1067–69 (9th Cir. 2011) (declaring that "*Twombly* and *Iqbal* are ill-suited to application in the constitutional standing context").

We now turn to the present case. Plaintiffs contend that they pled standing by alleging that Defendants had "deceived" them by not disclosing the sale of their PII and seeking damages from the income Defendants derived from this alleged deception.

Applying *Iqbal*'s two-pronged approach, we first identify Plaintiffs' well-pleaded factual allegations. After stripping away all conclusory statements of wrongdoing, we find that Plaintiffs' complaint contains the following well-pleaded factual allegations: Plaintiffs took tests administered by Defendants; Plaintiffs consented to participate in the information exchange programs offered by Defendants; and Plaintiffs did not know at the time of their examinations that

Defendants profited from these information exchange programs.

We next determine whether these well-pleaded factual allegations plausibly suggest a claim of subject matter jurisdiction. We find that Plaintiffs fail the second prong of *Iqbal* because Plaintiffs' well-pleaded factual allegations do not support injury in fact sufficient for standing under Article III of the Constitution.

Regarding injury in fact, this court has held that "[a] plaintiff who would have been no better off had the defendant refrained from the unlawful acts of which the plaintiff is complaining does not have standing under Article III of the Constitution to challenge those acts in a suit in federal court." *McNamara v. City of Chic.*, 138 F.3d 1219, 1221 (7th Cir. 1998) (collecting cases). It follows that a plaintiff's claim of injury in fact cannot be based solely on a defendant's gain; it must be based on a plaintiff's loss.[2] Here, Plaintiffs have not alleged that they lost anything of value as a result of the alleged misconduct.

As part of the information exchange program, Plaintiffs consented to and affirmatively authorized Defendants to

---

[2] Some district courts have explicitly applied this principle regarding injury in fact. *E.g. In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *5 (N.D. Cal. Dec. 3, 2013) ("[A] plaintiff must do more than point to the dollars in a defendant's pocket; he must sufficient[ly] allege that in the process he lost dollars of his own."); *Del Vecchio v. Amazon.com, Inc.*, No. C11-366RSL, 2012 WL 1997697, at *4 (W.D. Wash. June 1, 2012) ("It is not enough to allege only that the information has value to Defendant; the term 'loss' requires that Plaintiffs suffer a detriment.").

"send" or "share" certain PII with participating educational organizations in order to receive information about colleges, universities, scholarships, and other educational opportunities. The fact that Defendants allegedly collected a fee from participating educational organizations and did not disclose this sale did not make Plaintiffs worse off. In both potential scenarios—one with a fee paid to Defendants and one without a fee paid to Defendants—Plaintiffs' PII would have been conveyed to participating educational organizations in an identical manner, and Plaintiffs would have received the same benefits from the information exchange. Moreover, we find it telling that Plaintiffs actually benefited from participation in the information exchange programs, in contrast to their allegations of harm.

Additionally, Plaintiffs have pled that Defendants profited from the sale of their PII, but they did not establish how this profiteering deprived them of the economic value of this information. Plaintiffs' only claim of economic value associated with their PII is a portion of the value created by Defendants after Plaintiffs authorized the sending or sharing of their information to educational organizations.

In other words, Plaintiffs have claimed injury based solely on a gain to Defendants and without alleging a loss to themselves. Thus, we hold Plaintiffs' well-pleaded allegations do not establish an injury in fact and consequently, do not plausibly support a claim of subject matter jurisdiction.

Plaintiffs also argue that the allegations in their complaint give rise to the following reasonable inference: had Plaintiffs been told that their PII would be sold to third parties, they would have conditioned the sale on receipt of a portion of the sale proceeds. Here, we find that Plaintiffs' ar-

gument cannot satisfy the first prong of *Iqbal* because this inference cannot be reasonably drawn from Plaintiffs' well-pleaded factual allegations. Plaintiffs provide no factual support for the necessary inferential steps for this argument, including their desire and ability to demand, negotiate, and receive a portion of the PII proceeds from Defendants. Because Plaintiffs do not provide the requisite factual support, we do not have to determine whether Plaintiffs' "conditioned sale" argument gives rise to a plausible claim of subject matter jurisdiction.

### III. CONCLUSION

Having tested and examined Plaintiffs' arguments, we hold that Plaintiffs' well-pleaded factual allegations have not established a plausible claim of Article III standing and therefore subject matter jurisdiction.

For the foregoing reasons, the judgment of the district court is AFFIRMED.