**Vincent LEUNG, on behalf of himself and all others similarly situated,**
Plaintiff,

v.

**XPO LOGISTICS, INC., Defendant.**

**No. 15 C 03877**

United States District Court,
N.D. Illinois, Eastern Division.

Signed December 9, 2015

Katherine Marie Bowen, Consumer Advocacy Center, P.C., Michael S. Hilicki, Timothy J. Sostrin, Keith James Keogh, Keogh Law, Ltd., Chicago, IL, for Plaintiff.

Justin O'Neill Kay, Bradley Joseph Andreozzi, Carrie Elizabeth Delange, Drinker Biddle & Reath LLP, Chicago, IL, Emily Tancer Broach, Drinker Biddle & Reath LLP, New York, NY, for Defendant.

### ORDER

Honorable Edmond E. Chang, United States District Judge

After XPO Logistics called him with a prerecorded message, Vincent Leung sued XPO under the Telephone Consumer Protection Act.[1] XPO moved to stay the case in light of *Spokeo v. Robins*. There, the Supreme Court will decide whether a "bare violation" (to use the words of the certiorari petition) of a federal statute is an injury that confers Article III standing. This Court denied XPO's motion to stay because Leung had alleged several injuries apart from the bare violation of the TCPA. But the parties had not fully briefed standing apart from focusing on whether to stay in light of *Spokeo*. So at the Court's invitation, XPO filed a motion arguing that those other injuries do not confer standing and that, without them, all Leung has is the bare-violation injury at issue in *Spokeo*. Having now reviewed the briefs, the Court holds that Leung's other injuries do confer standing, so XPO's motion is denied.

### I. Background

For purposes of the dismissal motion, the Court accepts the general background facts alleged in the complaint as true. XPO provides last-mile transportation planning services to retailers. R. 1, Compl. ¶ 8. Leung is an individual residing in Illinois. *Id.* ¶¶ 5–6. XPO delivered IKEA items to Leung. *Id.* ¶ 13. Before delivery, Leung received at least one text message and an automated, prerecorded voice message from XPO "notifying him that the delivery was to take place and to confirm said delivery with [him]." *Id.* ¶ 14. After XPO delivered, Leung received another call from XPO, this one an automatic, prerecorded voice message inviting him to complete a survey about XPO's service. *Id.* ¶ 15. Leung did not consent to XPO's survey call. *Id.* ¶ 16.

Later, Leung sued XPO, alleging that the survey call violated the TCPA, which makes it "unlawful for any person ... to make any call (other than a call made for emergency purposes or with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to

---

1. The statutory basis for subject-matter jurisdiction is 28 U.S.C. § 1331. *See Mims v. Arrow Finan. Servs.,* —— U.S. ——, 132 S.Ct. 740, 744–45, 181 L.Ed.2d 881 (2012). Citations to the record are "R." followed by the docket number and then the page or paragraph number.

any telephone number assigned to a ... cellular telephone service...." *Id.* ¶ 33; 47 U.S.C. § 227(b)(1)(A)(iii). Leung alleges that the call caused him harm because he pays his telephone service provider for cellular service, and because the call invaded his privacy, diminished his phone's battery life, and wasted his phone's data storage capacity. Compl. ¶ 3. He also alleges that he was "subjected to the aggravation that necessarily accompanies these messages." *Id.*

As noted earlier, XPO moved to stay the case pending the Supreme Court's decision in *Robins v. Spokeo, Inc.,* 742 F.3d 409 (9th Cir.2014), *cert. granted,* — U.S. —, 135 S.Ct. 1892, 191 L.Ed.2d 762 (2015). R. 15, Mot. Stay. At issue in *Spokeo* is whether a "bare violation of a federal statute," in the absence of anything else, counts as an injury in fact sufficient to confer Article III standing on a plaintiff. Pet. for Writ of Certiorari at i, *Spokeo, Inc. v. Robins,* — U.S. —, — S.Ct. —, — L.Ed.2d — (No. 13–1339), 2014 WL 1802228, at *i. This Court denied XPO's motion because Leung alleged injuries in addition to the bare violation of the TCPA. R. 27, Stay Order at 1. But the Court invited XPO to file a motion attacking the sufficiency of those alleged injuries. *Id.* at 3. XPO has now done so. R. 28, Mot. Dismiss.

## II. Standard of Review

Article III of the U.S Constitution provides that "the judicial power of the United States ... extend[s] to all cases" of certain types and "to controversies between" diverse states or citizens. U.S. Const. art. 3, § 2. Anchored to those two key words, "case" and "controversy," is the "doctrine of standing." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *see also Silha v. Act, Inc.,* 807 F.3d 169, 173 (7th Cir.2015). A plaintiff with standing has a "case" or "controversy" that can invoke the federal judicial power; a plaintiff without standing does not. *Id.*

■■■ Standing has three elements, *id.* only the first of which is relevant here. To have standing, "the plaintiff must have suffered an injury in fact[, which is] an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Silha,* 807 F.3d at 173 (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 180–181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000)). There is no precise taxonomy of what qualifies as an injury in fact. Economic and non-economic injuries can both suffice. *See United States v. Students Challenging Regulatory Agency Procedures (SCRAP),* 412 U.S. 669, 686–87, 93 S.Ct. 2405, 37 L.Ed.2d 254 (1973) ("In interpreting 'injury in fact' we made it clear that standing was not confined to those who could show 'economic harm,'...."). And very small injuries might also be enough. *Brandt v. Vill. of Winnetka,* 612 F.3d 647, 649 (7th Cir.2010) ("Standing exists when the plaintiff suffers an actual or impending injury, no matter how small...."); *Sierra Club v. Franklin Cty. Power of Illinois, LLC,* 546 F.3d 918, 925 (7th Cir.2008) ("The defendants claim that [plaintiff's] injury is insubstantial, but the injury-in-fact necessary for standing need not be large, an identifiable trifle will suffice.") (internal quotation marks omitted); *Am. Civil Liberties Union of Illinois v. City of St. Charles,* 794 F.2d 265, 268 (7th Cir.1986) (finding sufficient injury where the "cost in this case is no doubt slight"). Despite these general principles, it still is often uncertain whether the allegedly violated right counts as a qualifying "legally protected interest."

One thing that is certain is that the plaintiff must establish her own standing,

and this includes showing an injury in fact. *Silha*, 807 F.3d at 173 ("As the party invoking federal jurisdiction, a plaintiff bears the burden of establishing the elements of Article III standing."). The plaintiff must do so "in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130. From this "manner and degree" requirement comes what are called facial and factual challenges to standing, which are evaluated using, respectively, the standards of motions to dismiss and motions for summary judgment: "[A] facial challenge argues that the plaintiff has not sufficiently alleged a basis of subject matter jurisdiction. In reviewing a facial challenge, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Silha*, 807 F.3d at 173 (citing *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir.2009)). In other words, "when evaluating a facial challenge to subject matter jurisdiction under Rule 12(b)(1), a court should use *Twombly–Iqbal's* 'plausibility' requirement, which is the same standard used to evaluate facial challenges to claims under Rule 12(b)(6)." *Id.* at 174. A factual challenge, on the other hand, "lies where 'the complaint is formally sufficient but the contention is that there is in fact no subject matter jurisdiction.'" *Apex Digital*, 572 F.3d at 443–44 (quoting *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir.2003)).

## III. Analysis

XPO argues that, facially and factually, Leung has suffered no injury in fact (setting aside the "bare violation" theory at issue in *Spokeo* ). R. 30, XPO's Br. at 3. The Court must disagree. Leung's lost time theory and aggravation (that is, intru-

sion into his privacy) theory of injury survive XPO's challenges. They are injuries in fact, sufficiently shown at this stage of the litigation. Leung's other alleged injuries—lost money, lost battery life, and used-up data storage—are not shown, at least not on the current record.

### A. XPO's Factual Attack

XPO has one factual argument that it says applies to all of Leung's theories of injury. XPO's Br. at 6–9. XPO argues, simply put, that if Leung's injuries exist at all, they are Leung's fault. *Id.* ("Where a plaintiff brought about his own claimed damages, the damages sought cannot be 'fairly traceable to the defendant's allegedly unlawful conduct.'"). According to XPO, Leung's alleged injuries are Leung's fault because, by failing to hang up, he "agreed to take the survey, completed it, and prolonged the call by doing so." *Id.* at 7. XPO submitted several print-outs meant to prove that Leung received its survey call and took the survey. R. 30–1, Colom Dec. (Leung did give high marks to XPO's delivery service.)

This attack fails because it relies on a false premise—that a plaintiff who makes his injury worse has no injury. *St. Charles* rejects the argument. 794 F.2d 265 at 268. In that case, the defendant-city put a cross on public property. *Id.* The plaintiffs, offended by the cross, drove out of their way to avoid it. *Id.* The time lost from driving around the cross was an injury in fact sufficient to confer standing. *Id.* And the city's argument that the plaintiffs injured themselves by choosing to drive around the cross—basically the same argument XPO is making—was rejected. *Id.* That the *St. Charles* plaintiffs and Leung could have reacted differently to the respective defendants' conduct and reduced or avoided their injuries does not mean they were not injured. As Leung points out, none of XPO's cited cases hold otherwise. Leung's Resp. Br. at 8–10.

That Leung failed to avoid or mitigate his alleged injury does not mean that he did not sustain it or that it is not traceable to XPO (who did, after all, place the call).

It also makes no difference (at least as to the lost time and aggravation injuries) that Leung offered no evidence of injury in response to XPO's factual attack. XPO's Reply Br. at 3 (arguing that Leung "failed to carry his burden"). Although the burden to prove jurisdiction ultimately rests with Leung, he only needs to come forward with evidence (at least at this early stage of the case) if XPO first produces something suggesting that Leung lacks standing. *Apex Digital*, 572 F.3d at 446 ("Although the district court is duty-bound to demand proof of jurisdiction when resolving factual disputes, it need not make such a demand when no true factual dispute exists.") (internal citation omitted); *see also Kanzelberger v. Kanzelberger*, 782 F.2d 774, 777 (7th Cir.1986) ("We do not suggest that the district court or this court must always or even often conduct an inquest on jurisdiction; but certainly if deficiencies in the pleadings, or facts brought out in pretrial discovery or at trial, fairly shriek that there is no federal jurisdiction, the district judge must conduct whatever supplementary factual proceedings are necessary to resolve the doubt."). Because XPO's factual argument rests on a false legal premise—that Leung staying on the line must mean he was not injured—there was no need for Leung offer proof to defeat the argument.

### B. Lost Time

 Having rejected the overall factual challenge, the Court now turns to XPO's facial challenges to Leung's alleged injuries. The first is lost time. When a defendant's allegedly wrongful conduct costs the plaintiff time, the plaintiff has suffered an injury in fact. *Freedom From Religion Found., Inc. v. Obama*, 641 F.3d 803, 807 (7th Cir.2011) ("What did provide

standing, we held, is that the plaintiffs had altered their daily commute, thus incurring costs in both time and money, to avoid the unwelcome religious display.") (referring to *St. Charles*, 794 F.2d at 268). Here, Leung alleges that he lost time in responding to XPO's call. Compl. ¶¶ 3, 15; R. 37, Leung's Resp. Br. at 6. That is enough, so XPO's motion must be denied.

The lower federal courts have recognized that lost time is enough to confer standing in TCPA cases. *See Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1251 (11th Cir.2015) ("the occupation of its fax machine for the period of time required for the electronic transmission of the data (which, in this case was one minute)" was a sufficient injury); *Martin v. Leading Edge Recovery Sols., LLC*, 2012 WL 3292838, at *3 (N.D.Ill. Aug. 10, 2012) ("[plaintiffs suffered an injury in fact] because they had to spend time tending to unwanted calls"). And lost time can be enough in cases that have nothing to do with the TCPA. *Am. Civil Liberties*, 794 F.2d at 268; *Rex v. Chase Home Fin. LLC*, 905 F.Supp.2d 1111, 1146 (C.D.Cal.2012) ("a plaintiff suffers an injury sufficient to establish Article III 'standing' where she alleges that she 'lost ... time spent responding to the' defendant's wrongful conduct.") (quoting *Walker v. City of Lakewood*, 272 F.3d 1114, 1124 (9th Cir.2001)). This theory of injury is independent of the bare-violation theory at play in *Spokeo*. *See Rex*, 905 F.Supp.2d at 1146 (distinguishing the time theory from the Spokeo theory).

XPO contests the lost-time theory in a footnote. XPO's Reply Br. at 4, n.3. The footnote first argues that the lost-time allegation is not in the complaint. But Leung was within his rights to rely on the theory because, although the complaint does not say "lost time is my injury" outright, its allegations plausibly support the theory because the complaint alleges that

the call's purpose was a survey (so, plausibly, time would be consumed by that type of call) and Leung did not consent to it (it was unwanted, so he lost time tending to it).

XPO also argues that Leung cannot rely on the lost-time theory because Leung voluntarily stayed on the call and completed its survey. This argument fails for two reasons. First, there was at least some time lost before Leung chose not to hang up. Even without all the time that comes after, that would be enough. *Brandt*, 612 F.3d at 649 ("Standing exists when the plaintiff suffers an actual or impending injury, no matter how small...."). And second, as discussed above, blame-the-victim arguments, although they may work in *mitigation* of damages, fail in the standing context. *See St. Charles*, 794 F.2d at 268.

It is worth noting too that a consumer in Leung's position—having received delivery from XPO and then received an out-of-the-blue phone call—might very well feel the need to stay on the line. According to XPO, the prerecorded call started with the introduction, "This is UX Specialized Logistics calling on behalf of IKEA, regarding your order. To continue in English, please press [1]." Christopher Colom Decl. ¶ 6. Based on that introduction, Leung could have thought that IKEA was trying to contact him about his order, and would have felt compelled to stay on the line. After pressing 1, the call continued, "This is UX Specialized Logistics, authorized delivery and assembly provider for IKEA. We know your time is valuable but we take your experience with our service seriously. We would appreciate you taking 2 minutes to answer a few questions by pressing the number 1 for Yes and the number 2 for No." *Id.* ¶ 6. It is true that the prerecorded message is giving Leung

the option to decline to take the survey, but even this part of the message again refers to IKEA and does not explicitly say that the consumer is under no obligation to answer the survey. So, even XPO's legitimate mitigation arguments as to damages do not completely undermine Leung's damages theory, and certainly do not refute Leung's lost-time injury in fact for standing purposes. The lost time confers standing.[2]

## C. Aggravation / Intrusion into Privacy

■ Leung next alleges that XPO's unwanted call aggravated him. Compl. ¶ 3; Leung's Resp. Br. at 3–4. Like his allegation of lost-time, this injury confers standing and so it is an independently sufficient ground on which to deny XPO's motion. Injuries to emotional and dignitary interests are among those that count as injuries in fact. *See, e.g.*, Wright and Miller, Fed. Prac. & Proc. § 3531.4 (3d Ed., 2015) ("Other more-or-less abstract interests that support standing include individual reputation, privacy, and dignity."). Long before Congress passed the TCPA, these interests were already recognized as legally protected in the relevant sense. *Id.* Here, Leung alleges that the call was an aggravation, a nuisance, and that it invaded his privacy. Compl. ¶ 3; Leung's Resp. Br. at 3–4. It is entirely plausible that the survey call caused Leung the small amount of emotional or dignitary harm necessary to confer standing. *Freedom From Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1467 (7th Cir.1988) ("Provided a litigant alleges the existence of a distinct and palpable injury, even a minor injury can satisfy the case or controversy requirement of Article III."). It bears repeating again, *see supra* at 10 n.2, that this injury is enough to confer *standing*, and does not

---

**2.** This conclusion does not at all suggest that anyone can file a lawsuit solely based on unwanted phone calls. Here, injury in fact based on lost time confers *standing* ; it does not by itself confer an actual *cause of action*.

necessarily grant a *cause of action* to anyone who gets an unwanted call.

XPO's contrary arguments are nonstarters. First, XPO converts its jurisdiction motion into a failure-to-state-a-claim attack on a cause of action Leung did not plead. XPO's Br. at 5–6. XPO argues that Leung cannot plead state-law intrusion on seclusion. *Id.* But that is irrelevant to whether Leung has a legally protected interest and whether that interest has been invaded. Next, XPO relies on *Freedom from Religion* to argue that " 'aggravation' is a feeling and 'a feeling ... cannot suffice as injury in fact.' " XPO's Br. at 4 (quoting *Freedom from Religion*, 641 F.3d at 808). The case does say "a feeling of alienation cannot suffice as injury in fact." *Id.* at 808. But it did not mean that emotional injuries—what a non-lawyer might call hurt feelings—categorically do not confer standing. Emotional distress is a form of injury in fact that can confer standing. *E.g., Petit v. City of Chicago*, 31 F.Supp.2d 604, 612 (N.D.Ill.1998) ("Those plaintiffs claimed emotional distress. In that case, the Seventh Circuit stated that the Article III constitutional standing requirements were satisfied ....") (discussing *McNamara v. City of Chicago*, 138 F.3d 1219, 1222 (7th Cir.1998)). Rather, *Freedom from Religion* was within a special category of standing cases dealing with government and religion under the First Amendment.

There is often no standing in those cases, not because the injuries involve "feelings," but because the injuries do not damage a legally protected interest. The cases rest on the premise that one does not have a legally protected interest in not being offended by generally applicable government action; that is, action to which one is a bystander, as opposed to a target. *Freedom from Religion*, 641 F.3d at 805 ("No one has standing to object to a statute that imposes duties on strangers....

It takes an invasion of one's own rights to create standing."). That principle does not apply here. Leung is not a bystander; he was the target of XPO's call. Being offended by a law that has nothing to do with you is categorically different than being offended at something someone does to you.

### D. Lost Money

■ For the sake of completeness, the Court will address the other theories advanced by Leung. On the current record, Leung's allegations about lost money are insufficient to confer standing. No doubt, losing money to a defendant's wrongful conduct counts as an injury in fact. *In re Aqua Dots Products Liab. Litig.*, 654 F.3d 748, 751 (7th Cir.2011) ("A financial injury creates standing."). But Leung does not really allege that XPO's call cost him money. Rather, he says that "[he] and the putative class have to pay their cell phone service providers for the use of their cellular telephones." Compl. ¶ 3. Missing is any allegation that Leung had to pay anything extra because of what XPO did. XPO's Br. at 5 ("Plaintiff does not allege that he pays for his cell phone service because of the survey call or even that he paid his telephone service provider for the call he is challenging."). "[A] plaintiff who would have been no better off had the defendant refrained from the unlawful acts of which the plaintiff is complaining does not have standing...." *See Silha*, 807 F.3d at 174 (quoting *McNamara*, 138 F.3d at 1221). Leung has failed to allege that he paid money because of XPO's call that he would not have otherwise paid.

Leung tries to save this theory by arguing that the Court is bound by (possibly outdated) FCC findings to the effect that wireless customers are "charged for incoming calls whether they pay in advance or after the minutes are used." Leung's Resp. Br. at 7. Leung is wrong. The Court is under no obligation to apply the

FCC's general factual pronouncements, only its *legal* interpretations. *See* 28 U.S.C. § 2342(1); *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). In any event, the FCC has never found that *Leung* pays for each call and that is what matters here. If, at some future point in the litigation, Leung means to rely on this theory, he must allege and prove that he "would have been [ ] better off" financially had XPO not called. (That, likely, would mean providing his cellular service contract to show that, by its terms, the XPO call cost Leung money.)

### E. Lost Battery Life

 Next, Leung alleges that XPO's call "dimish[ed] cellular battery life," Compl. ¶ 3, adding in his brief that "he lost time by having to recharge his cell phone battery" and that "cellular telephone batteries do not last indefinitely." Leung's Resp. Br. at 6–7. This theory fails because the allegations necessary to make it plausible are missing. Leung has not pled the length of the call and, without more, it is not plausible that a short call would have any measurable impact on a cell phone battery ("measurable" in the sense of costing Leung money somehow or degrading the battery to any non-negligible extent). With regard to recharging his phone, Leung did not plead that he would not have done so anyway or that XPO's call forced him to recharge his phone at an inconvenient time or earlier than he planned to. *See Silha,* 807 F.3d at 174 ("[A] plaintiff who would have been no better off had the defendant refrained from the unlawful acts of which the plaintiff is complaining does not have standing....").

### F. Lost Data Storage Capacity

 Finally, Leung alleges that XPO's call "waste[d] data storage capacity." Compl. ¶ 3. XPO challenged this theory in its brief, R. 30, XPO's Br. at 6, and Leung failed to defend or even mention it in his response. Accordingly, Leung has waived it. *See Bonte v. U.S. Bank, N.A.,* 624 F.3d 461, 466 (7th Cir.2010) ("Failure to respond to an argument ... results in waiver."). The complaint, standing alone, does not allege *how* the call would actually "waste" data storage capacity; it is not apparent what Leung even means by this, and he said nothing more about it in his brief. This theory fails.

### IV. Conclusion

Because Leung has standing based on his lost-time injury and his aggravation/lost-privacy injury, XPO's motion to dismiss, R. 28, is denied. At the upcoming status hearing, the Court will set the discovery schedule to move the case forward.